Filed 12/30/22  P. v. Copley CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C094616 |
| Plaintiff and Respondent, | (Super. Ct. No. CR107854) |
| v. | |
| RANDY COPLEY, | |
| Defendant and Appellant. | |

Defendant Randy Copley appeals the trial court's denial of his Penal Code section 1172.6[1] (former § 1170.95)[2] petition for resentencing following an evidentiary hearing. Defendant contends the prosecution presented insufficient evidence that he acted with implied malice.  Alternatively, defendant contends the trial court erroneously concluded

---

[1]  All undesignated statutory references are to the Penal Code.

[2]  Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6.  (Stats. 2022, ch. 58, § 10.)

1

that an aider and abettor who does not expressly intend to aid a killing can be convicted of second degree murder if he acts with conscious disregard for life, rather than with the more culpable mental state of reckless indifference to life. We disagree with both contentions and affirm the trial court's denial of defendant's petition for resentencing.

## I. BACKGROUND

On August 13, 1992, defendant pled guilty to one count of second degree murder, in exchange for dismissal of a robbery count and a robbery-murder special circumstance.

On January 15, 2019, defendant filed a petition for resentencing under former section 1170.95. The court assigned defendant counsel to assist in the petition.

On October 7, 2020, the trial court determined that defendant had set forth a prima facie case for relief and issued an order to show cause.

On December 16, 2020, the trial court conducted a hearing on defendant's petition.

On July 23, 2021, in a written order, the trial court denied defendant's petition, finding that the People had proved beyond a reasonable doubt that defendant was guilty of aiding and abetting implied malice second degree murder.

In the order denying defendant's petition, the trial court relied on the recitation of facts supporting his plea in 1992, as follows:[3]

"At the time alleged on the information, in Sacramento County, the two defendants were drinking beer, and by their own admission, doing some crank. And they were at the Poloma Billiards establishment in Rancho Cordova. They met the victim Mr. Fenske who at that time had become intoxicated and needed a ride home. They agreed to give Mr. Fenske a ride home, and I believe that at that time in the bar, while there was—

---

[3] On appeal, defendant does not contest the court's factual findings or its admission of evidence at the resentencing hearing.

I'm not trying to describe a formal agreement, but I think there was kind of an unsaid agreement that Mr. Fenske was going to be left off without his money.

"Sometime later the two defendants returned to the bar, and at that time they in fact did have additional money in order to purchase beer. They told the bartender they had taken Mr. Fenske home.

"As it developed, Mr. Fenske was left in the field on the way—generally on the way to his home. He had been strangled, beaten, and stabbed.

"The evidence supports the conclusion that Mr. Crotty is the defendant who actually killed Mr. Fenske. It was—he was the one who—it was his knife. And further, after the murder, he went to another witness and asked this person to try to hide the knife."

The trial court also relied on defendant's statement contained in his probation report:

"[Copley] related that after they agreed to transport the victim home, Crotty stated that they could 'roll him and take his money.' As they were driving the victim home, Crotty directed him to stop the truck. Crotty and the victim exited the truck and Crotty 'knocked the old man to the ground.' Crotty then picked up the victim and walked him into the field. Copley was still in the truck, but believed Crotty was striking the victim in that Copley could hear the victim yelling. Copley then proceeded toward the two and observed Crotty 'beating' the victim. Copley noticed the victim's wallet and searched through it but found no money. The two then proceeded back to the truck and as they drove approximately 10 feet, Crotty directed him to stop, stating, 'I know this guy has got to have some money.' Crotty then went back to where the victim was and returned approximately two to three minutes later. Crotty stated that he stabbed the victim and Copley did not believe him and hoped he did not actually commit the offense. Copley denied stabbing the victim and only touched the victim when he pushed the victim out of

3

the truck. Lastly, he reiterated that they planned to 'roll' the victim in that he was drunk and had money."[4]

Defendant filed a timely notice of appeal.

## II. DISCUSSION

A.    *Substantial Evidence of Implied Malice*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), effective January 1, 2019, "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*); §§ 188, subd. (a)(3), 189, subd. (e).) The substantive amendments to sections 188 and 189 enacted by Senate Bill 1437 established that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill 1437 also added former section 1170.95 (now section 1172.6), which permits a person to petition for resentencing if he or she could no longer be convicted of murder under the amendments to sections 188 and 189. (§ 1172.6, subd. (a)(3); *Lewis, supra,* 11 Cal.5th at pp. 957, 959; *Gentile, supra,* 10 Cal.5th at p. 843; *People v. Martinez* (2019) 31 Cal.App.5th 719, 722-723.) However, if the record of conviction shows that the petitioner was convicted under a theory that remains valid under the amendments enacted by Senate Bill 1437—e.g., direct aiding and abetting—the petitioner is not entitled to resentencing under section 1172.6. (*Gentile, supra,* at p. 848 ["Senate Bill

---

[4] The trial court also admitted as evidence statements defendant made at parole hearings. However, we do not include them in our recitation of the facts because the court concluded the statements were not necessary to the court's findings.

4

1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought"]; *People v. Estrada* (2022) 77 Cal.App.5th 941, 945 [first degree murder conviction based on direct aiding and abetting with intent to kill is ineligible for resentencing under § 1172.6].)

Where a petitioner makes a prima facie showing for relief under section 1172.6, the trial court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the conviction, recall the sentence, and resentence the petitioner. (§ 1172.6, subd. (d)(1).) The burden at the hearing is on the prosecution "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

On appeal from denial of a section 1172.6 petition after an evidentiary hearing, we review the trial court's decision for substantial evidence. (See *People v. Garrison* (2021) 73 Cal.App.5th 735, 747; *People v. Clements* (2022) 75 Cal.App.5th 276, 298 (*Clements*).) As the court in *Clements* explained: "Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*Clements, supra,* at p. 298.) Under this standard, "[w]e ' "examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence–that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt." ' " (*Ibid.*)

5

Defendant contends the denial of his petition should be reversed and the case remanded for resentencing because there was no substantial evidence to support the trial court's finding beyond a reasonable doubt that defendant acted with implied malice.

Murder is "the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) Malice can be express or implied. (§ 188, subd. (a).) "Express malice requires a showing that the assailant either desires the victim's death or knows to a substantial certainty that the victim's death will occur." (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.) Implied malice represents a lower standard for murder. (See *People v. Smith* (2005) 37 Cal.4th 733, 739 [" 'Murder does not require the intent to kill. Implied malice—a conscious disregard for life—suffices' "]; *People v. Swain* (1996) 12 Cal.4th 593, 602.) "[M]alice is implied when the killing resulted from an intentional act, the natural consequences of which are dangerous to human life, performed with knowledge of and conscious disregard for the danger to human life." (*People v. Thomas* (2012) 53 Cal.4th 771, 814; see *People v. Chun* (2009) 45 Cal.4th 1172, 1181.)

The California Supreme Court has "explained that an aider and abettor's guilt 'is based on a combination of the direct perpetrator's acts and the aider and abettor's own acts and own mental state.' " (*People v. Perez* (2005) 35 Cal.4th 1219, 1225, quoting *People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) " '[A] person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.' " (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 295-296; see also *Perez, supra*, at p. 1225.) Under "direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another if the accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.' " (*Gentile, supra,* 10 Cal.5th at p. 843.)

6

Thus, while Senate Bill 1437 eliminated natural and probable consequences liability for second degree murder based on *imputed* malice, *implied* malice remains a valid theory of aider and abettor liability for second degree murder. (*Gentile, supra*, 10 Cal.5th at p. 850 ["[N]otwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life"]; see also *People v. Rivera* (2021) 62 Cal.App.5th 217, 232 ["In other words, a person may still be convicted of second degree murder, either as a principal or an aider and abettor, 'if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life' "]; *People v. Offley* (2020) 48 Cal.App.5th 588, 596 ["One who directly aids and abets another who commits murder is thus liable under the new law just as he or she was liable under the old law"].)

"Because direct evidence of a defendant's intent rarely exists, intent may be inferred from the circumstances of the crime and the defendant's acts." (*People v. Sanchez* (2016) 63 Cal.4th 411, 457.) "Mere presence at the crime scene is, by itself, not aiding and abetting, but it can be one factor among others that support conviction as an aider and abettor. [Citation.] 'Among the factors which may be considered in determining aiding and abetting are: presence at the crime scene, companionship, and conduct before and after the offense.' [Citation.] The intent to aid and abet may form before or during the perpetrator's commission of the crime." (*People v. Sedillo* (2015) 235 Cal.App.4th 1037, 1065.)

We conclude that substantial evidence supports the trial court's finding that defendant was guilty of aiding and abetting implied malice second degree murder. Defendant's agreed-upon plan with Crotty was to give the intoxicated, elderly victim a ride home in order to steal his money. Defendant drove the victim to a remote area where he then pushed the victim out of the truck. Crotty "knocked the old man to the ground"

7

and carried the victim off to a field to continue the beating. Defendant could hear the victim yelling as Crotty hit him. Defendant then approached the two of them and saw Crotty beating the victim. Rather than intervene, defendant picked up the victim's wallet and checked it for money. This evidence supports the inference that defendant acted to complete the theft after perceiving that Crotty's intention was to beat the victim past the point where he could offer any resistance. Finding the wallet empty, Crotty and defendant got back in the truck, drove 10 feet, and stopped because Crotty still thought the victim must have some money. Defendant simply waited for Crotty. This evidence supports the inference that defendant, aware of Crotty's frustration over not finding money in the victim's wallet, knew that Crotty would continue the brutal assault on the helpless victim. When Crotty returned and stated that he had stabbed the victim, defendant did nothing to check on or aid the victim, but rather drove Crotty back to the bar, leaving the victim in a place where he was likely to die before he could be discovered.

Viewing the evidence in the light most favorable to the trial court's decision, we conclude substantial evidence supports the court's determination that defendant was guilty of implied malice second degree murder as a direct aider and abettor.

B.     *Reckless Indifference to Human Life*

Defendant contends that Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2) (Senate Bill 775), effective January 1, 2022, confirmed that Senate Bill 1437 narrowed liability for implied malice murder for aiders and abettors to circumstances where the prosecution can show either intent to kill or reckless indifference to human life. Therefore, defendant argues, the trial court erred in not imposing this higher level of culpability than conscious disregard for life. We disagree.[5]

---

[5] For this reason, defendant's reliance on *In re Scoggins* (2020) 9 Cal.5th 667 is misplaced.

8

Defendant acknowledges that this court in *People v. Powell* (2021) 63 Cal.App.5th 689 (*Powell*), held that an implied malice aider and abettor must know that the perpetrator intended to commit the life endangering act; intend to aid the perpetrator in the commission of the act; know the act is dangerous to life; and act "in conscious disregard for human life." (*Id.* at p. 713.) In *Powell, w*e cited *Gentile, supra,* 10 Cal.5th at p. 850, discussed above, where the California Supreme Court noted that Senate Bill 1437 eliminated the natural and probable consequences doctrine but not second degree murder liability for an aider and abettor who " 'knows that his or her conduct endangers the life of another and acts with conscious disregard for life.' " (*Powell, supra,* at p. 713.) Defendant asserts that *Powell* was wrongly decided and is inconsistent with *Gentile* (despite the former expressly relying on the latter).

Defendant notes that Senate Bill 775 amended subdivision (a) of former section 1170.95 to provide that any "person convicted of felony murder or murder under the natural and probable consequences doctrine *or other theory* under which malice is imputed to a person based solely on that person's participation in a crime" may file a petition to have the conviction vacated and resentencing on any remaining counts. (Italics added.) The language defendant quotes from former 1170.95, as amended by Senate Bill 775, echoes section 188, subdivision (a)(3), as amended by Senate Bill 1437, that "[m]alice shall not be imputed to a person based solely on his or her participation in crime." Defendant further argues the version of section 189 enacted by Senate Bill 1437 limits malice imputed solely from participation in a crime to a person who was the "actual killer," who with "intent to kill" aided or counseled the killer, or who was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(1)-(3).) Defendant posits that previous to Senate Bill 775, there was some question whether former section 1170.95 only applied to convictions for felony murder or murder under the natural and probable consequences doctrine. Defendant argues that the addition of the

9

phrase "or other theory" expanded the scope of a section 1170.95 to any conviction, including "all accessorial theories of murder liability," based on malice imputed from participation in the crime. This line of argument deems malice implied in aider and abettor second degree murder to be malice imputed from participation in the crime. (See *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 590 (*Glukhoy*), review granted July 27, 2022, S274792.) Thus, defendant asserts that, under Senate Bills 1437 and 775, aider and abettor implied malice second degree murder based on "conscious disregard for life" has been abrogated and the higher culpable mental state of "reckless indifference to human life" is now required.

As defendant also acknowledges, we recently rejected this argument in *Glukhoy* and upheld *Powell*. In *Glukhoy*, we said, "for second degree murder based on implied malice, there is no imputation of malice because, as we have explained, the direct aider and abettor must have the same mental state as the actual perpetrator of the charged crime: the direct aider and abettor must act with knowledge that *the act* is dangerous to human life and with conscious disregard for human life. Given the mens rea requirements for aiding and abetting implied malice, not only is malice not 'imputed' on this direct aiding and abetting theory, but liability is not grounded 'solely' upon participation in the crime within the meaning of section 188, subdivision (a)(3) as amended in Senate Bill 1437. Liability for murder is grounded upon the requirement that the aider and abettor personally harbor malice." (*Glukhoy, supra,* 77 Cal.App.5th at pp. 590-591, rev. granted.)

We further held that "nothing in Senate Bill 775 or its legislative history indicates a rejection of our high court's observation concerning the availability of direct aiding and abetting implied malice murder as a theory of accomplice liability, nor is there any legislative history indicating disagreement with our holding in *Powell*. If the Legislature intended to abrogate aiding and abetting implied malice murder, we think it would have expressly done so in Senate Bill 775." (*Glukhoy, supra*, 77 Cal.App.5th at p. 591, rev.

granted.)

## III.  DISPOSITION

The order of the trial court is affirmed.

/S/

RENNER, J.

We concur:

/S/

ROBIE, Acting P. J.

/S/

EARL, J.

11